UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JABARI JACKSON and <br> TAMARA JACKSON, <br>     Plaintiffs, <br>     v. <br> SPECIALIZED LOAN SERVICING, LLC, <br>     Defendant. | No. 17 C 7169 <br><br> Judge Rebecca R. Pallmeyer |

**MEMORANDUM OPINION AND ORDER**

In November 2006, Plaintiffs Jabari and Tamara Jackson took out a home loan mortgage from the Decision One Mortgage Company. Years later, Plaintiffs defaulted on their debt and the loan servicer, Defendant Specialized Loan Servicing, LLC ("SLS"), initiated foreclosure proceedings. The Jacksons sought refinancing and loss mitigation, without success. In this action, Plaintiffs allege that in its interactions with Plaintiffs, SLS violated the Fair Debt Collection Practices Act ("FDCPA") and the Real Estate Settlement Procedures Act ("RESPA"). Their FDCPA claim (Count I) alleges that Defendant violated 15 U.S.C. § 1692c(a)(2) by communicating directly with them instead of their attorney regarding their outstanding debt. In their RESPA claim (Count II), Plaintiffs allege that Defendant violated § 1024.41(g) of Regulation X, which implements RESPA, by moving for a judgment of foreclosure while a loss mitigation application was pending.

Defendant moves for summary judgment on both claims. Defendant contends that the FDCPA claim fails because Plaintiffs waived the protection of § 1692c(a)(2), because Defendant had no knowledge that Plaintiffs were represented by counsel, and because Plaintiffs' counsel represented them only in the foreclosure proceedings, and not in connection with loss mitigation. Defendant seeks dismissal of Count II on the ground that no loss mitigation application was actually pending at the time that Defendant moved for a judgment of foreclosure. For the reasons stated here, the court grants summary judgment in favor of Defendant on the RESPA claim; summary judgment is denied with respect to the FDCPA.

**BACKGROUND**

For some years prior to this litigation, Plaintiffs Jabari and Tamara Jackson resided in the home they owned at 6113 Newbury Lane, Matteson, IL 60443. (Def.'s Rule 56.1 Statement of Material Facts, hereinafter "Def.'s SOF" [46], ¶ 1.) On November 27, 2006, Plaintiffs obtained a mortgage on this property and took out a home loan with Decision One Mortgage Company. (Def.'s SOF ¶ 5.) The loan was initially serviced by Wells Fargo Bank, N.A., doing business under the name of America's Servicing Company. (Def.'s SOF ¶ 6.) On December 1, 2015, American Servicing Company transferred servicing of the loan to Defendant Specialized Loan Servicing, LLC ("SLS"). (Def.'s SOF ¶ 10.)

By the time SLS took over servicing of their loan, Plaintiffs were in default (Def.'s SOF ¶ 7), and the lender (Deutsche Bank at this point) had filed a foreclosure action in the Circuit Court of Cook County in October 2015. (Def.'s SOF ¶ 8; Plaintiffs' Response in Opposition to Defendant's Rule 56.1 Statement of Material Facts, hereinafter "Pl.s' Resp. to Def.'s SOF" [51], ¶ 8.) The law firm Manley Deas Kochalski, LLC ("Manley Deas") represented Deutsche Bank in the foreclosure proceeding, and SLS retained Manley Deas as counsel after taking on the position as loan servicer. (Def.'s SOF ¶¶ 9–10.)

On January 31, 2016, Plaintiffs submitted an application for mortgage assistance to SLS under the Making Home Affordable Program. (Def.'s SOF ¶ 11.) A month and a half later, SLS advised Plaintiffs that their application for the Home Affordable Modification Program ("HAMP") Tier 1 (a program that would have resulted in modified mortgage payments) had been denied, but that they had been approved for HAMP Tier 2. (Def.'s SOF ¶ 12; Communication from SLS to Plaintiffs of 3/11/16, Ex. 6 to Jabari Jackson Dep., Ex. A to Def.'s SOF.) The Tier 2 program gave Plaintiffs the option to release the deed to their property in lieu of foreclosure, or to proceed with a "short sale" of the property as an alternative. (Pl.s' Resp. to Def.'s SOF ¶ 12; Communication from SLS to Jacksons of 3/11/16.) This communication from SLS gave Plaintiffs instructions on how to proceed with these options, but Plaintiffs did not pursue either one, and the time period in

which to do so expired a few weeks later. (Def.'s SOF ¶ 13; Communication from SLS to Jacksons of 3/11/16.)

On April 9, 2016, Plaintiffs applied for a second independent review of their HAMP application. (Letter from Jacksons to SLS of 4/9/2016, Ex. 7 to Jabari Jackson Dep.) This time, SLS responded quickly, advising the Jacksons in writing that the second independent review had confirmed the denial of their application. (Def.'s SOF ¶ 14.) Despite these communications, Plaintiffs contend that a loss mitigation application remained pending at the time SLS moved for a judgment of foreclosure several months later. (Pl.s' Resp. to Def.'s SOF ¶¶ 14–15.) Plaintiff Tamara Jackson explains that she believed the application was still pending because, she asserts, Plaintiffs continued to receive phone calls from SLS discussing loss mitigation and loan modification options. (Pl.s' Resp. to Def.'s SOF ¶ 14.)

Indeed, following the April 2016 application, the parties continued to communicate regularly in writing and by telephone for several months. (Def.'s SOF ¶ 16.) In May 2016, Plaintiffs wrote to SLS inquiring about the possibility of remaining in the home as renters after relinquishing the deed, with an option to re-purchase it. (*Id.*) Further 2016 communications from SLS encouraged Plaintiffs to inquire about loss mitigation options, assigned them a new "Relationship Manager" to handle their debt, and offered a trial period for mortgage payment modification. (See Ex. 13–18 to Jabari Jackson Dep.) In a December 2, 2016 letter, SLS offered Plaintiffs the option of settling their debt for a one-time payment of $215,000. (Letter from SLS to Jacksons of 12/2/16, Ex. 19 to Def.'s SOF.) This letter explained that Plaintiffs could accept the offer by returning the letter and the payment amount in certified funds before January 31, 2017. (*Id.*)

With this offer pending, SLS's attorneys moved for a judgment of foreclosure on December 14, 2016. (SLS Amended Answer ¶ 30.) Proceedings followed over the next several months related to the foreclosure suit. In January 2017, Plaintiffs retained counsel, the Consumer Legal Group, P.C. ("CLG"), to represent them. (Jabari Jackson Dep. 27:5–9.) Plaintiffs state that they hired CLG to represent them for purposes of the foreclosure proceeding and "in connection with" the debt they owed. (Def.'s SOF ¶ 21, Pl.s' Resp. to Def.'s SOF ¶ 21.) Tamara testified that

3

she advised SLS in phone calls that Plaintiffs were represented by counsel. (Tamara Jackson Dep. 44:16–20, 80:23–24, 81:1, Ex. B to Def.'s SOF.) Jabari Jackson believes this to be the case as well. (Jabari Jackson Dep. 34:19–23.)

On March 6, 2017, Plaintiffs again wrote to SLS, asking about the possibility of a deed in lieu of foreclosure as a loss mitigation option. (Def.'s SOF ¶ 17; Letter from Jacksons to SLS of 3/6/17, Ex. 20 to Jabari Jackson Dep.) The letter concludes, "Please contact me as soon as possible so that we may begin this process." (Letter from Jacksons to SLS of 3/6/17.) SLS did not respond until June 6, 2017, when SLS sent a letter essentially identical to the one it had sent Plaintiffs six months earlier. (Letter from SLS to Jacksons of 6/6/2017, Ex. 23 to Jabari Jackson Dep.) This June 6 letter again offered to settle the Plaintiffs' debt for a single payment of $211,500, this time setting June 30, 2017 as the date on which the offer would expire. (*Id.*) SLS contends that this letter was in direct response to Plaintiffs' March 6 letter. (Def.'s SOF ¶ 18.) Plaintiffs dispute that a letter sent three months later was in fact a response to their "contact me as soon as possible" letter of March 6, and emphasize that they retained counsel in the interim. (Pl.s' Resp. to Def.'s SOF ¶ 18.) The June 6, 2017 letter from SLS and the December 14, 2016 motion for a judgment of foreclosure are central to this case. Plaintiffs contend SLS violated the FDCPA by communicating with them directly, rather than through counsel, and that SLS violated RSPA by proceeding with foreclosure while their loss mitigation application was pending.

## DISCUSSION

Defendant moves for summary judgment on both the Plaintiffs' claims under the FDCPA and RESPA Regulation X. Granting a motion for summary judgment is proper only when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining whether this standard is met, the court views the evidence in the light most favorable to the non-moving party and draws reasonable inferences in the non-moving party's favor. *Smith v. Simm Assocs., Inc.*, 926 F.3d 377, 380 (7th Cir. 2019). A dispute of material fact exists if the evidence would allow a reasonable jury to find in favor of the non-moving party. *Minerva Dairy, Inc. v. Harsdorf*, 905 F.3d 1047, 1053 (7th Cir. 2018.)

4

**A.  FDCPA Claim**

Pursuant to the FDCPA, "[w]ithout the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate with a consumer in connection with the collection of any debt—. . . (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address." 15 U.S.C. § 1692c(a)(2). Plaintiffs claim that Defendant violated this specific provision by sending them a letter on June 6, 2017 while they were represented by counsel. In its motion for summary judgment, Defendant contends that this letter was sent with the prior consent of the Plaintiffs, that Plaintiffs cannot establish that Defendant knew that Plaintiffs were represented by an attorney at all, and that Plaintiff's attorneys did not represent them with respect to their debt. The court considers each of these arguments in turn.

**1.  Waiver**

SLS argues, first, that Plaintiffs consented to receive the June 6 letter directly, despite being represented by counsel, because the letter was in response to a request made by Plaintiffs three months earlier. (Defendant's Memorandum in Support of Its Motion for Summary Judgment, hereinafter "Def.'s Mem." [45], at 6.) The plain language of the statute indicates that a consumer can waive the protection of § 1692c(a)(2) if the consumer gives "prior consent . . . directly to the debt collector" to receive the communication despite having representation. 15 U.S.C. § 1692c(a)(2).

The Seventh Circuit has not specifically addressed this provision or set a standard for evaluating what constitutes prior consent, but SLS itself suggests that the court should apply the "unsophisticated consumer standard" that governs other FDCPA claims, including claims alleging misleading or unconscionable practices in violation of 15 U.S.C. §§ 1692e and 1692f. (Def.'s Mem. at 7.) *See, for example, Smith*, 926 F.3d at 380; *Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679, 684 (7th Cir. 2017); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014). Under this standard, the court "view[s] FDCPA violations through the objective lens of an unsophisticated consumer who, while uninformed, naïve, or trusting, possesses at least

5

reasonable intelligence, and is capable of making basic logical deductions and inferences." *Smith*, 926 F.3d at 380. SLS notes that the Ninth Circuit has enforced this standard in a case addressing a claimed waiver of the "cease communication" directive of 15 U.S.C. §1692c(c). Thus, in *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006), the court reasoned that because the "least sophisticated debtor" test applies generally in the FDCPA to protect gullible and ignorant consumers, a "heightened standard of voluntariness" should also apply to potential waiver of FDCPA protections. *Id.* at 1171. The court held that it would "enforce a waiver of the cease communication directive only where the least sophisticated debtor would understand that he or she was waiving his or her rights under § 1692c(c)." *Id.* That test was met in *Clark*, where the debt collector returned a phone call from the debtor herself. Although *Clark* covers a different subsection of § 1692c, the provisions are analogous: Section 1692c(a)(2) prohibits a debt collector from communicating with a consumer represented by an attorney, while § 1692c(c) prohibits communication with a consumer when that consumer requests a debt collector to end further correspondence. 15 U.S.C. §§ 1692c(a)(2), (c). Applying the standard outlined in *Clark*, this court will consider whether the "least sophisticated consumer" in Plaintiffs' situation would have understood their March 6 letter to SLS as giving consent for SLS to communicate directly with them, rather than through counsel.

The court finds disputes of fact on this issue. SLS emphasizes that Plaintiff Jabari Jackson wrote "contact me" at the end of the March 6, 2017 letter, and urges that the June 6, 2017 letter was a direct response to that request. (Def.'s Mem. at 6.) The court reads this correspondence differently. In the March 6 letter, Plaintiffs asked about the possibility of giving a deed in lieu of foreclosure, and concludes by asking that SLS contact them "as soon as possible so that we may begin this process." (Letter from Jacksons to SLS of 3/6/17.) The purported "response," not sent for a full three months, offered Plaintiffs a lump-sum payment option to settle their debt. (Letter from SLS to Jacksons of 6/6/17.) Nothing in the June 6 letter makes any reference to a deed-in-lieu option, nor does it mention the March 6 letter; instead, it appears to be a standard dunning letter essentially identical to the letter SLS had sent on December 2, 2016. (See Letter from SLS

6

to Jacksons of 12/2/16.) In short, contrary to SLS's characterization, its June 6 letter does not obviously constitute "the type of information the Plaintiffs had been requesting" or "the kind of information the Plaintiffs wanted." (Def.'s Mem. at 6, 9.) The least-sophisticated debtor in Plaintiff's position would not understand an inquiry into one loss-mitigation option as an expression of "prior consent" for wholly unrelated correspondence from a debt collector. The analysis might be different if Plaintiffs' letter had asked about options more generally, or if SLS had responded more promptly and specifically to Plaintiffs' deed-in-lieu proposal. The court is not prepared, on this record, to conclude that SLS is entitled to a summary judgment that Plaintiffs consented to direct contact and waived the protection of § 1692c(a)(2).

SLS cites to a number of other cases addressing waiver of § 1692c protections, but none compel an opposite result. First, *Clark*, discussed earlier, concerns waiver of the "cease communication" directive of § 1692c(c). *Clark*, 460 F.3d at 1172. The plaintiff in that case had requested that defendant debt collector cease further contact, but later placed a phone call to the debt collector's attorney, requesting information about the debt. *Id.* at 1167. It was the debt collector's employee, not the attorney, who returned plaintiff's call, and the Ninth Circuit concluded that the attorney was entitled to summary judgment on plaintiff's § 1692c(c) claim, because the least sophisticated debtor would have understood the plaintiff's conduct as giving the attorney consent "to provide the *specific information* she requested." *Id.* at 1172 (emphasis added). Significantly, as for the debt collector itself, the court ruled that its liability depended on the disputed nature of the plaintiff's request and to whom it was directed—a factual issue that made summary judgment improper. *Id.* In the case before this court, Plaintiffs asked SLS to contact them "as soon as possible" about a deed-in-lieu option. Instead, SLS sent a standard dunning letter three months later, addressing an offer to settle their debt. This clearly was not "the specific information" that Plaintiffs requested.

*Scheffler v. Gurstel Chargo, P.A.*, 902 F.3d 757 (8th Cir. 2018), also cited by SLS, similarly addresses an alleged waiver of the "cease communications" directive. Plaintiff in that case asked the debt collector to cease further communication but later called the debt collector to inquire

7

about the debt, effectively "waiv[ing] his rights under § 1692c(c) so as to allow the debt collector to answer his question." *Id.* at 763. In the case before this court, SLS characterizes Plaintiff's March 6 request for a deed-in-lieu arrangement as a waiver of Plaintiff's right to require communication only through counsel; but Defendant's June 6 was not an effort to answer Plaintiff's question. It was, instead, an offer of an unrelated resolution of the debt.

SLS also cites two district court rulings concerning waiver of §1692c(a)(2) protection: *Backlund v. Messerli & Kramer, P.A.*, 964 F. Supp. 2d 1010 (D. Minn. 2013), and *Burthlong v. Midland Funding, L.L.C.*, No. 08-4658, 2010 WL 420554 (E.D. La. January 29, 2010). Neither case is authoritative, and both are distinguishable  *Backlund* held that the defendant did not violate § 1692c(a)(2) when it sent default notices to the plaintiff despite plaintiff's representation by counsel, as the plaintiff had entered into a previous written agreement to receive these notices. *Backlund*, 964 F. Supp. 2d at 763. In *Burthlong*, the plaintiff waived the protections of § 1692c(a)(2) when she called the debt collector and the debt collector answered her questions. *Burthlong*, 2010 WL 420554, at *2. Plaintiffs here did not request the settlement offer presented in SLS's June 6 letter. The court is unwilling to conclude, as a matter of law, that their earlier request for a very different resolution of their debt constitutes a waiver of the protection of § 1692c(a)(2).

### 2. Knowledge and Purpose of Representation

As an alternative defense, SLS contends that at the time of the June 6 letter, it had no knowledge that Plaintiffs were represented by counsel for purposes of negotiating a resolution of the indebtedness. (Def.'s Mem. at 6.) SLS is correct that violations of § 1692c(a)(2) hinge on the debt collector's actual knowledge of the consumer's representation. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004); *See also Raimondi v. McAllister & Assocs., Inc.*, 50 F. Supp. 2d 825, 827–28 (N.D. Ill. 1999) ("[p]laintiff must present evidence from which it can be reasonably inferred that defendant had actual knowledge that she was represented by an attorney"). The statute itself plainly reflects this requirement, stating that the ban on communications is triggered where "the debt collector knows the consumer is represented by an attorney with respect to such

8

debt." 15 U.S.C. § 1692c(a)(2). Liability requires that the debtor know not only that the debtor "is represented by counsel generally, but that he or she is represented in connection with the specific debt at issue." *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 WL 4264967, at *2 (N.D. Ill. Aug. 8, 2016).

Jabari Jackson testified that Plaintiffs hired counsel in January 2017. (Jabari Jackson Dep. 27:5–9.) Defendant contends, however, that Plaintiffs did not hire counsel to address the issue of their outstanding debt, so SLS's communication with Plaintiffs concerning that debt was not improper. In support, SLS cites Jabari Jackson's deposition testimony that Plaintiffs hired an attorney "to defend [them] in the foreclosure case," but not to "negotiate a loan modification as well." (Defendant's Reply in Support of Its Motion for Summary Judgment, hereinafter "Def.'s Reply" [54], at 5; Jabari Jackson Dep. 38:3–8.) Defendant cites cases from a Florida district court holding that representation in foreclosure proceedings is not sufficient to demonstrate representation with respect to all debt-related activity. *See Wright v. Select Portfolio Servicing, Inc.*, No. 14-cv-2298, 2015 WL 419618, at *5 (M.D. Fla. Feb. 2, 2015); *Nordwall v. PNC Mortg.*, No. 14-cv-747, 2015 WL 4095350, at *3 (M.D. Fla. July 7, 2015). As Plaintiffs note, however, Jabari Jackson testified later in his deposition that Plaintiffs hired counsel "for the purpose of representing [them] in connection with a debt." (Jabari Jackson Dep. 91:19–24.) The fact that Plaintiffs did not hire counsel "for the purpose of loan modification" (Def.'s Reply at 6) does not, in the court's view, put them outside the protection of the statute. The FDCPA requires only that the consumer be "represented by an attorney with respect to such debt." 15 U.S.C. § 1692c(a)(2). Based on Jabari Jackson's firsthand knowledge and his uncontroverted testimony, a reasonable jury could find that Plaintiffs retained counsel to represent them generally regarding their debt with Defendant. Consequently, a genuine issue of material fact exists regarding the purpose of Plaintiffs' representation.

Although SLS initially appeared to concede the point,[1] SLS now contends Plaintiffs cannot establish that SLS knew that Plaintiffs had retained counsel at all. (Def.'s Reply at 3.) There are at a minimum disputes of fact on this issue. Plaintiffs note the pendency of the foreclosure; though they have not submitted records of those proceedings, the court presumes that the attorneys SLS hired for the foreclosure action were aware of the involvement of attorneys for Plaintiffs. That knowledge is attributable to SLS. Plaintiffs refer, further, to records of phone conversations between Plaintiffs and Defendant's employees. (Pl.s' Resp. at 9.) Both Plaintiffs testified that they believe they informed Defendant over the phone before June 6 that they were represented by counsel. (Tamara Jackson Dep. 44:16–20; Jabari Jackson Dep. 34:16–22.) Viewing the record in the light most favorable to the Plaintiffs, a reasonable jury could conclude that Defendant did have knowledge that Plaintiffs had retained counsel before June 6.

Because Plaintiffs did not waive the protection of § 1692c(a)(2), and because there are disputes of fact exist regarding the purpose of their representation and Defendant's knowledge of this representation, summary judgment on Plaintiffs' FDCPA claim is inappropriate. Defendant's motion with respect to Count I is denied.

**B.    RESPA Claim**

Defendant next moves for summary judgment on Plaintiffs' claim that Defendant violated RESPA (through its implementing regulation, Regulation X) when moving for foreclosure judgment while a loss mitigation application was pending. The regulation states:

> If a borrower submits a complete loss mitigation application . . . a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless: (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, . . . or the borrower's appeal has been denied.

12 C.F.R. § 1024.41(g).

In their original complaint, Plaintiffs intimate that SLS violated Regulation X by moving for foreclosure judgment a few days after making a December 2, 2016 offer to settle the debt.

---

[1] "SLS does not contest it knew of CLG's representation." (Def.'s Mem. at 6.)

10

(Complaint ¶¶ 27–31, Ex. 2 to Jabari Jackson Dep.)  Defendant correctly points out that this is an improper reading of the regulation, which bars a lender from seeking a judgment of foreclosure after the borrower "submits a complete loss mitigation *application*."  12 C.F.R. § 1024.41(g) (emphasis added).  In this case, Plaintiffs did submit a loss mitigation application, and SLS informed them in a March 11, 2016 communication that their HAMP Tier 1 application had been denied.  (Def.'s SOF ¶ 12; Communication from SLS to Plaintiffs of 3/11/16, Ex. 6 to Jabari Jackson Dep.)  The March 11 communication offered Plaintiffs some loss mitigation options (including a proposal for a deed in lieu of foreclosure), but the time to exercise those options expired without Plaintiffs' having exercised them.  Plaintiffs sought an independent review of their loss mitigation application, but Defendant confirmed the original findings and again denied it.  (Def.'s SOF ¶ 14.)  SLS contends, therefore, that there was no application pending when it sought foreclosure.

Plaintiffs have not argued that SLS failed to follow protocol in evaluating their loss mitigation application.  Instead, they contend that the evaluation of this loss mitigation application was still ongoing when Defendants moved for a judgment of foreclosure because they were still being contacted about loss mitigation options.  (Plaintiffs' Response to Defendant's Motion for Summary Judgment, hereinafter "Pl.s' Resp." [53], at 11.)  Whatever the content of those communications may have been, the record here confirms that Plaintiffs' loss mitigation application was denied first in March 2016, and then, following an independent review, denied again.  There is no evidence in this record that any such application was actually pending at the time Defendant sought a judgment of foreclosure.  The fact that Plaintiffs may have hoped or believed their communications might have led to some relief makes no difference.  (Pl.s' Resp. to Def.'s SOF ¶ 15.)

Plaintiffs ask that the court delay this ruling on a motion for summary judgment to allow them to depose Defendant's agent, hoping to discuss the "status of the loss mitigation application" at the time of the foreclosure.  (Pl.s' Resp. at 12.)  The court declines to reopen discovery; the documentary record shows that both Plaintiffs' loss mitigation application and their appeal were

denied. Moreover, even if they made another application—there is no evidence of this—Regulation X does not mandate that Defendant must review more than one application. 12 C.F.R. § 1024.41(i). There is no reason to postpone the consideration of this summary judgment motion to learn more about the status of the Plaintiffs' loss mitigation application.

Because there is no dispute of material fact as to whether Plaintiffs had a pending loss mitigation application, Defendant did not violate Regulation X and is entitled to summary judgment with respect to Count II.

## CONCLUSION

Plaintiffs did not waive the protections of the FDCPA and have demonstrated that issues of material fact exist with respect to their FDCPA claim, concerning specifically the purpose of their representation by counsel and Defendant's knowledge of it. Because Plaintiffs did not have a pending loss mitigation application at the time Defendant moved for foreclosure judgment, Defendant is entitled to summary judgment on their RESPA claim. Defendant's motion for summary judgment [44] is denied with respect to Count I and granted with respect to Count II. The parties are encouraged to discuss settlement.

ENTER:

Dated: September 25, 2019

_____
REBECCA R. PALLMEYER
United States District Judge